UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT JOWITT,                        ) Case No. EDCV 15-0390-JPR
                                      )
                    Plaintiff,        )
                                      ) **MEMORANDUM OPINION AND ORDER**
           v.                         ) **AFFIRMING COMMISSIONER**
                                      )
CAROLYN W. COLVIN, Acting             )
Commissioner of Social                )
Security,                             )
                                      )
                    Defendant.        )
_____       )

**I.    PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision

denying his applications for Social Security disability insurance

benefits ("DIB") and supplemental security income benefits

("SSI").  The parties consented to the jurisdiction of the

undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The

matter is before the Court on the parties' Joint Stipulation,

filed January 14, 2016, which the Court has taken under

submission without oral argument.  For the reasons stated below,

the Commissioner's decision is affirmed.

1

## II.   BACKGROUND

Plaintiff was born in 1968.  (Administrative Record ("AR") 139.)  He completed about four years of college and worked as an automotive oiler and salvage laborer.  (AR 36, 64-65, 70-71, 165.)

On June 16, 2011, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since October 2, 2009, because of a "[b]ack injury."  (AR 139, 146, 164.)  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 99.) A hearing was held on September 21, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 57-77.)  In a written decision issued October 24, 2012, the ALJ found Plaintiff not disabled.  (AR 28-36.)  On January 7, 2015, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

2

Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).   "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of

3

impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

sequential analysis.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
<u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

    B.   <u>The ALJ's Application of the Five-Step Process</u>

    At step one, the ALJ found that Plaintiff had not engaged in
substantial gainful activity since October 6, 2009, the alleged
onset date.  (AR 30.)  At step two, he concluded that Plaintiff
had the severe impairments of discogenic low-back pain at L4-L5
and L5-S1 with degenerative changes, chronic L5 radiculopathy,
and spondylosis without myelopathy.[2]  (<u>Id.</u>)  At step three, the
ALJ determined that Plaintiff's impairments did not meet or equal
any of the impairments in the Listing.  (<u>Id.</u>)  At step four, he
found that Plaintiff had the RFC to perform "less than the full
range of light work."  (AR 31.)  Specifically, Plaintiff could
lift, carry, push, or pull 20 pounds occasionally and 10 pounds
frequently; sit, stand, or walk six hours in an eight-hour
workday; and perform postural activities occasionally.  (<u>Id.</u>)
Based on the VE's testimony, the ALJ concluded that Plaintiff
could perform his past relevant work as a salvage laborer.  (AR
36.)  Accordingly, the ALJ found Plaintiff not disabled.  (<u>Id.</u>)

**V.   DISCUSSION**

    <u>The ALJ Properly Found that Plaintiff's Impairments</u>

    <u>Did Not Meet or Equal Listing 1.04(A)</u>

    Plaintiff contends the ALJ erred in finding that his
impairments did not meet or equal Listing 1.04(A).  (J. Stip. at

---

   [2] Radiculopathy is disorder of the spinal nerve roots.  <u>See
Stedman's Medical Dictionary</u> 1503 (27th ed. 2000).  Spondylosis
refers generally to degeneration of the vertebrae.  <u>See</u> <u>id.</u> at
1678.  Myelopathy is disorder of the spinal cord.  <u>See</u> <u>id.</u> at
1171.

1  4-8, 11-12.)

2      A.   Applicable law

3      At step three of the sequential evaluation process, the ALJ

4  must evaluate the claimant's impairments to see if they meet or

5  medically equal those in the Listings.  See §§ 404.1520(d),

6  416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.

7  1999).  Listed impairments are those that are "so severe that

8  they are irrebuttably presumed disabling, without any specific

9  finding as to the claimant's ability to perform his past relevant

10 work or any other jobs."  Lester, 81 F.3d at 828.

11     The claimant has the initial burden of proving that an

12 impairment meets or equals a listing.  See Sullivan v. Zebley,

13 493 U.S. 521, 530-31 (1990).  "To meet a listed impairment, a

14 claimant must establish that he or she meets each characteristic

15 of a listed impairment relevant to his or her claim."  Tackett,

16 180 F.3d at 1099 (emphasis in original).  "To equal a listed

17 impairment, a claimant must establish symptoms, signs and

18 laboratory findings 'at least equal in severity and duration' to

19 the characteristics of a relevant listed impairment, or, if a

20 claimant's impairment is not listed, then to the listed

21 impairment 'most like' the claimant's impairment."  Id. (quoting

22 § 404.1526) (emphasis in original).  Medical equivalence,

23 moreover, "must be based on medical findings"; "[a] generalized

24 assertion of functional problems is not enough to establish

25 disability at step three."  Id. at 1100 (citing § 404.1526).

26     An ALJ "must evaluate the relevant evidence before

27 concluding that a claimant's impairments do not meet or equal a

28 listed impairment."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir.

6

2001).  The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).  The ALJ does not err by discussing the evidence supporting his conclusion only in other sections of his decision. See id. at 1200-01 (finding no error when ALJ failed to state or discuss evidence supporting conclusion that claimant's impairments did not satisfy Listing but "made a five page, single-spaced summary of the record"); Lewis, 236 F.3d at 513 (ALJ required "to discuss and evaluate the evidence that supports his or her conclusion," but no error when ALJ does not "do so under the heading 'Findings'").  Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

An ALJ's decision that a claimant did not meet a listing must be upheld if it was supported by "substantial evidence." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam) (citing Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  When evidence is susceptible of more than one rational interpretation, the Court must uphold the ALJ's conclusion.  Id.

7

1    In order to meet Listing 1.04(A), a claimant must establish

2  a spine disorder resulting in compromise of a nerve root or the

3  spinal cord, with "[e]vidence of nerve root compression

4  characterized by neuro-anatomic distribution of pain, limitation

5  of motion of the spine, motor loss (atrophy with associated

6  muscle weakness or muscle weakness) accompanied by sensory or

7  reflex loss and, if there is involvement of the lower back,

8  positive straight-leg raising test (sitting and supine)."  20

9  C.F.R. pt. 404, subpt. P, app. 1 § 1.04.  Spine disorders that

10  may satisfy Listing 1.04 include "herniated nucleus pulposus,

11  spinal arachnoiditis, spinal stenosis, osteoarthritis,

12  degenerative disc disease, facet arthritis, [and] vertebral

13  fracture."  Id.

14    B.  Analysis

15    The ALJ concluded that although Plaintiff had the severe

16  impairments of discogenic low-back pain at L4-L5 and L5-S1 with

17  degenerative changes, chronic L5 radiculopathy, and spondylosis

18  without myelopathy, they did not meet or equal any of the

19  impairments in the Listing, "including those found under 1.04."

20  (AR 31.)  The ALJ provided a "more detailed discussion to support

21  this finding" in step four.[3]  (Id.; see AR 31-36.)  As discussed

22

23    [3] Plaintiff characterizes the ALJ's "simple two sentence
conclusion" and analysis in step three as "inadequate." (J.
24  Stip. at 8, 12.)  The ALJ, however, did not err in providing
factual support for his conclusion through his six-page
25  discussion of the medical evidence in step four.  See Gonzalez,
914 F.2d at 1200-01 (finding no error in failure to discuss why
26  claimant's impairments did not satisfy listing because ALJ's
four-page evaluation of evidence was adequate statement of
27  factual foundations).  Indeed, here, unlike in Gonzalez, in
(continued...)
28

below, substantial evidence supported his conclusion.

    Nothing in the medical evidence shows that Plaintiff had nerve-root compression as required under Listing 1.04(A). Plaintiff points to a December 2009 MRI showing disc protrusions with annular tears at L4-L5 and L5-S1, asserting that the disc protrusions "caused nerve root compression." (J. Stip. at 8; see AR 307-08.)  But the MRI results indicated only the presence of disc protrusions and said nothing about whether the protrusions caused nerve-root compression.  (See AR 307-08); see Huizar v. Astrue, No. CV 11-7246-PLA, 2012 WL 3631526, at *7 (C.D. Cal. Aug. 23, 2012) (finding that claimant did not meet Listing 1.04(A) when she contended that disc protrusion touched nerve root but did not "point to evidence of any disc protrusion that has resulted in the compression of a nerve root" (emphasis in original)); Corralez v. Astrue, No. CV 10-06272-JEM, 2011 WL 1812784, at *6 (C.D. Cal. May 12, 2011) (finding that claimant failed to "show evidence of nerve root compression" under Listing 1.04(A) when MRI "indicated a disc bulge that abutted but did not compress the nerve root").  Accordingly, Dr. Albert Simpkins Jr., an orthopedic specialist and agreed medical evaluator who examined Plaintiff in June 2010 and reviewed additional medical records in August 2011, did not diagnose nerve-root compression. (AR 420, 451-52.)  Plaintiff also points to a March 2010 EMG, which "suggest[ed] probable chronic motor radiculopathy L4-L5

_____

[3] (...continued)
finding that Plaintiff did not meet Listing 1.04(A), the ALJ specifically referred to his later discussion of the medical evidence.  (AR 31.)

Bilaterally." (AR 268.) But radiculopathy refers to any disorder affecting the spinal nerve roots and does not necessarily indicate compression of nerve roots. See Stedman's Medical Dictionary 1503 (27th ed. 2000) ("Disorder of the spinal nerve roots."); Herniated Disk, MedlinePlus, http:// www.nlm.nih.gov/medlineplus/ency/article/000442.htm (last updated Sept. 8, 2014) ("any disease that affects the spinal nerve roots"). Thus, Plaintiff has not established Listing 1.04(A)'s first requirement. See Garcia v. Colvin, No. CV 14-5070-PLA, 2015 WL 1467256, at *5 (C.D. Cal. Mar. 26, 2015) (holding that claimant did not satisfy Listing 1.04(A) because "irritation of the lumbar and sacral nerve in the lumbar spine" was not equivalent to nerve-root compression (emphasis omitted)).

Plaintiff also fails to establish all the symptoms of nerve-root compression required under Listing 1.04(A). For example, although medical sources noted decreased sensation in Plaintiff's legs and, on two occasions, atrophy in his right thigh (AR 408, 421), they also assessed normal strength and no significant changes in reflex (AR 261-62 (Mar. 2010), 514 (Sept. 2010), 507 (Oct. 2010), 503 (Nov. 2010), 500 (Jan. 2011), 496 (Feb. 2011), 489 (Apr. 2011), 485 (May 2011), 481 (July 2011), 478 (Aug. 2011), 475 (Sept. 2011), 471 (Nov. 2011), 467 (Dec. 2011), 523 (same), 572 (Jan. 2012), 575 (Mar. 2012), 578 (Apr. 2012), 581 (June 2012)). On several occasions, Plaintiff was assessed with intact sensation or no atrophy. (AR 514 (Sept. 2010), 503 (Nov. 2010), 523 (Dec. 2011).) Thus, Plaintiff has not shown motor loss (with muscle weakness) accompanied by sensory or reflex loss, as required by Listing 1.04(A). See Limbrick v. Colvin,

10

No. CV 14-9692-PLA, 2015 WL 5554002, at *5 (C.D. Cal. Sept. 21, 2015) (finding that claimant did not meet Listing 1.04(A) when he presented no evidence of "significant atrophy or muscle weakness" and noting that "minimal" motor loss was not equivalent to atrophy).

Further, although Plaintiff had several positive straight-leg raises for his right leg, it is unclear whether they were positive in both sitting and supine positions, as the express language of Listing 1.04(A) requires.  (See, e.g., AR 261-62 (positive in sitting only), 273 (unspecified), 467 (same), 471 (same), 475 (same), 478 (same), 481 (same), 485 (same), 489 (same), 500 (same), 507 (same), 523 (same), 572 (same), 575 (same)); see Huizar, 2012 WL 3631526, at *7 (finding that claimant who was positive for straight-leg raising in sitting position did not meet Listing 1.04(A) because he was not positive in supine position).  It was the ALJ's prerogative to resolve this ambiguity.[4]  Andrews, 53 F.3d at 1039; see also Sandgathe,

---

[4] Plaintiff complains that the ALJ did not "call a medical expert" to clarify any ambiguities in the record and "testify as to whether or not [Plaintiff] met or equaled the listing." (J. Stip. at 12.)  But the ALJ was not required to call a medical expert.  Under SSR 96-6p, when the ALJ determines that a claimant's impairments do not equal any in the Listing, he may satisfy the duty to receive expert-opinion evidence into the record by obtaining the signature of a state medical consultant on the appropriate form.  Castaneda v. Astrue, 344 F. App'x 396, 398 (9th Cir. 2009).  Here, the ALJ satisfied SSR 96-6p: the state-agency medical experts signed the required Disability Determination and Transmittal forms.  (AR 78-81.)  Thus, the ALJ had no duty to call a medical expert to testify.  See Castaneda, 344 F. App'x at 398 (ALJ not required to call medical expert to testify whether claimant's impairment satisfied Listing 1.04 when ALJ's determination was supported by substantial evidence and
(continued...)

108 F.3d at 980 (reviewing court must uphold ALJ's decision when evidence is susceptible of more than one rational interpretation).  Given that Plaintiff also had several negative straight-leg raises for his right leg (AR 329, 332, 353, 419, 496, 578, 581), he has not shown that he satisfied this requirement.

In addition, although medical sources consistently assessed a limited range of motion for Plaintiff's lumbar spine (see, e.g., AR 467, 471, 475, 478, 481, 485, 489, 496, 500, 503, 507, 514, 523, 572, 575, 578, 581), a physical therapist noted that he demonstrated "signs of self limitation during ROM and special testing" (AR 330, 332, 353).  Thus, Plaintiff fails to satisfy this requirement as well, especially given that he does not challenge the ALJ's determination that he was "less than fully credible" and that the record "strongly suggest[ed]" that he "exaggerated symptoms and limitations."  (AR 32.)  Moreover, as already discussed, Plaintiff had normal motor strength, reflexes, and some negative straight-leg raises.  See Smith v. Colvin, No. EDCV 13-2244 AJW, 2015 WL 248281, at *3 (C.D. Cal. Jan. 20, 2015) (finding that claimant did not meet Listing 1.04(A) although she had limited range of motion because treating physician "consistently found that [she] had full motor strength in the bilateral lower extremities, normal reflexes, and negative straight-leg raising tests"); see also Zebley, 493 U.S. at 530 (holding that "[f]or a claimant to show that his impairment

───────────

[4] (...continued)
nonexamining state-agency medical experts signed required forms).

12

satisfies a listing, it must meet all of the specified medical criteria," and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify" (emphasis omitted)).

For all these reasons, substantial evidence supported the ALJ's finding at step three that Plaintiff's impairments did not meet or equal any of the impairments in the Listing, including 1.04(A).  See Sandgathe, 108 F.3d at 980; Worth v. Astrue, 330 F. App'x 642, 644 (9th Cir. 2009) (affirming ALJ's determination that claimant did not satisfy Listing 1.04(A) because "[t]he medical record revealed that [claimant] suffered neither nerve root compression nor symptoms of compression, such as sensory or reflex loss").  Plaintiff is not entitled to remand on this ground.

## VI.  CONCLUSION

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.


DATED: <u>June 21, 2016</u>                    <u>JEAN ROSENBLUTH</u>
                                              JEAN ROSENBLUTH
                                              U.S. Magistrate Judge

---

[5] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."